*Appeal No. 13-2523*

---

# UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

---

**ESTHER BUCHANAN, on behalf of herself and a class,**

**Plaintiff - Appellant,**

**v.**

**NORTHLAND GROUP INC.,**

**Defendant - Appellee.**

---

**Appeal from the United States District Court
for the Western District of Michigan, at Grand Rapids,
Hon. Janet P. Neff, presiding.**

**Case No. 1:12CV1011**

---

## OPENING BRIEF OF PLAINTIFF-APPELLANT

---

**Daniel A. Edelman**
**Cathleen M. Combs**
**Thomas E. Soule**
**EDELMAN COMBS LATTURNER & GOODWIN LLC**
**120 South LaSalle Street, 18th Floor**
**Chicago, Illinois 60603**
**(312) 739-4200**
**(312) 419-0379 (FAX)**
**courtecl@edcombs.com**
*Counsel for plaintiff-appellant Esther Buchanan*

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: __13-2523__          Case Name: __Buchanan v. Northland Group Inc.__

Name of counsel: __Thomas E. Soule__

Pursuant to 6th Cir. R. 26.1, __Esther Buchanan__
*Name of Party*

makes the following disclosure:

1.   Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2.   Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

No.

CERTIFICATE OF SERVICE

I certify that on _____November 26, 2013_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Thomas E. Soule
Counsel for plaintiff Esther Buchanan

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ ii

REQUEST FOR ORAL ARGUMENT ................................................ vii

JURISDICTIONAL STATEMENT ...................................................... 1

ISSUES PRESENTED FOR REVIEW ................................................. 2

STATEMENT OF THE CASE ............................................................ 3

STATEMENT OF FACTS .................................................................. 4

SUMMARY OF ARGUMENT ........................................................... 9

ARGUMENT ................................................................................ 11

    I.     STANDARD OF REVIEW ................................................... 11

    II.    THE VIEWS OF THE FEDERAL TRADE COMMISSION AND
          THE CONSUMER FINANCIAL PROTECTION BUREAU
          MUST BE GIVEN DEFERENCE ......................................... 11

        A.    The FTC ...................................................................... 11

             1.    Reports by the FTC ................................................. 13

             2.    The Delgado *amici* brief .......................................... 15

             3.    The suit against Asset Acceptance ........................... 18

        B.    The CFPB, and other federal and state agencies ................. 20

        C.    Deference in light of the actions of the FTC, CFPB and others ........ 21

        D.    The District Court's error ................................................. 25

    III.   THE DISTRICT COURT DID NOT READ THE FDCPA
          BROADLY TO PROTECT CONSUMERS, AS REQUIRED ............... 30

    IV.   CONCLUSION .............................................................. 37

COMPLIANCE CERTIFICATE (Fed.R.App.P. 32(a)) ......................... 38

CERTIFICATE OF SERVICE ......................................................... 38

DESIGNATION OF DOCUMENTS (6th Cir. R. 30(g)) ....................... 38

i

## TABLE OF AUTHORITIES

### *Cases*

*Acierno v. Worthy Bros. Pipeline Corp.*, 656 A.2d 1085 (Del. 1995)....................35

*Alaska v. O'Neill Investigations Inc.*, 609 P.2d 520 (Alaska 1980) ......................19

*American Mining Congress v. Mine Safety & Health Administration*,
    995 F.2d 1106 (D.C. Cir.1993).......................................................29

*Arlington v. Federal Communications Commission*,
    133 S.Ct. 1863 (2013)......................................................... 9, 29, 30

*Auer v. Robbins*, 519 U.S. 452 (1997) ............................................ 10, 17

*Bragdon v. Abbott*, 524 U.S. 624 (1998) ...............................................25

*Bridge v. Ocwen Federal Bank FSB*, 681 F.3d 355 (6th Cir. 2012).......................30

*Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430 (6th Cir. 2012) .................... 11, 34

*Carter v. Welles-Bowen Realty Inc.*, 736 F.3d 722 (6th Cir. 2013) ................ 23, 24

*Chase Bank USA NA v. McCoy*, 131 S.Ct. 871 (2011)..................................... 10, 17

*Chevron USA Inc. v. Natural Resources Defense Council Inc.*,
    467 U.S. 837 (1984)................................................................ *passim*

*Clifford Steers & Shenfield Inc. v. Federal Trade Commission*,
    392 F.2d 921 (6th Cir. 1968) ........................................................12

*Clomon v. Jackson*, 988 F.2d 1314 (2d Cir.1993) ..................................................26

*Delgado v. Capital Management Services Inc.*, No. 4:12CV4057,
    2013 WL 1194708 (C.D.Ill. March 22, 2013)......................................... 8, 37

*Delgado v. Capital Management Services LP*, No. 13-2030 (7th Cir.)........... *passim*

*Dupuy v. Weltman*, 442 F.Supp.2d 822 (N.D.Cal. 2006) .......................................35

*Durham v. Brock*, 498 F.Supp. 213 (M.D.Tenn. 1980),
    *aff'd*, 698 F.2d 1218 (6th Cir. 1982) ............................................................13

*Evory v. RJM Acquisitions LLC*, 505 F.3d 769 (7th Cir. 2007) .............................34

*Federal Express Corp. v. Holowecki*, 552 U.S. 389 (2008) ...................................24

*Federal Home Loan Mortgage Corp. v. Lamar*,
    503 F.3d 504 (6th Cir.2007) ........................................................................26

*Federal Trade Commission v. Colgate-Palmolive Co.*,
    380 U.S. 374 (1965).............................................................................. 9, 12

*Federal Trade Commission v. Mandel Brothers Inc.*,
    359 U.S. 385 (1959)...................................................................................19

*Gburek v. Litton Loan Servicing LP*, 614 F.3d 380 (7th Cir.2010).......................36

*Goswami v. American Collections Enterprise Inc.*,
    377 F.3d 488 (5th Cir.2004) ........................................................................35

*Gully v. Van Ru Credit Corp.*, 381 F.Supp.2d 766 (N.D.Ill.2005).........................35

*Hagy v. Demers & Adams LLC*, No. 2:11CV530,
    2011 WL 6091797 (S.D.Ohio Dec. 7, 2011)................................................35

*Health Insurance Association of America v. Shalala*,
    23 F.3d 412 (D.C. Cir.1994)........................................................................29

*In re TJX Companies Retail Security Breach Litigation*,
    564 F.3d 489 (1st Cir. 2009)........................................................................28

*Jerman v. Carlisle McNellie Rini Kramer & Ulrich LPA*,
    559 U.S. 573 (2010)...................................................................................32

*Jeter v. Credit Bureau Inc.*, 760 F.2d 1168 (11th Cir. 1985) ..................................32

*Johnson v. Revenue Management Corp.*, 169 F.3d 1057 (7th Cir.1999) ...............26

*Kimber v. Federal Financial Corp.*, 668 F.Supp. 1480 (M.D.Ala. 1987)........ 16, 17

*Kistner v. Law Offices of Michael P. Margelefsky LLC*,
    518 F.3d 433 (6th Cir. 2008) ................................................. 10, 26

*Lewis v. ACB Business Services Inc.*, 135 F.3d 389 (6th Cir. 1998) ................. 8, 36

*McRill v. Nationwide Credit Inc.*, No. 2:12CV2175,
    2012 WL 6727974 (C.D.Ill. Dec. 6, 2012)................................. 7, 36

*Midtec Paper Corp. v. United States*, 857 F.2d 1487 (D.C. Cir.1988) ..................29

*Minnesota v. Midland Funding LLC*,
    No. 27-CV-11-11510 (Hennepin Co. (Minn.) Dist. Ct.)...............................21

*Oakmont Presbyterian Home v. Pennsylvania Dep't of Public Welfare*,
    633 A.2d 1315 (Pa. Commw. 1993)...............................................35

*Rawson v. Source Receivables Management LLC*, No. 1:11CV8972,
    2012 WL 3835096 (N.D.Ill. Sept. 4, 2012)............................... 7, 36

*Rice v. Midland Credit Management Inc.*,
    933 F.Supp.2d 1040 (N.D.Ill. 2013).................................. 25, 28, 29

*Rice v. Midland Credit Management*, No. 1:12CV1395 (N.D.Ill.) .........................28

*Russell v. Goldman Roth Acquisitions LLC*,
    847 F.Supp.2d 994 (W.D.Mich. 2012).........................................31

*Securities & Exchange Commission v. Chenery Corp.*,
    332 U.S. 194 (1947).......................................................18

*Sherman v. Phelps*, 297 N.W. 222 (Mich. 1941)....................................35

*Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). ...................... 7, 10, 11, 24

*Solis v. Laurelbrook Sanitarium & School Inc.*,
    642 F.3d 518 (6th Cir. 2011) ............................................. 10, 24

iv

*Trans Union Corp. v. Federal Trade Commission*,
    81 F.3d 228 (D.C. Cir. 1995) .................................................................. 19, 29

*United States v. Asset Acceptance LLC*, No. 8:12CV182 (M.D.Fla.) ........ 18, 19, 27

*United States v. Cinemark USA Inc.*, 348 F.3d 569 (6th Cir. 2003) ........................19

*Wallace v. Capital One Bank*, 168 F.Supp.2d 526 (D.Md. 2001) ...........................16

*Wallace v. Washington Mutual Bank FA*, 683 F.3d 323 (6th Cir. 2012) ...............26

*Williams Co. v. Federal Trade Commission*,
    381 F.2d 884 (6th Cir. 1967) .......................................................... 12, 31, 32

## **Statutes and Rules**

6 N.Y. City R. §2-191 .......................................................................................21

12 C.F.R. §226.1 *et seq.* (2010) ..........................................................................17

15 U.S.C. §41 *et seq.* ................................................................................... 23, 32

15 U.S.C. §45 ..................................................................................... *passim*

15 U.S.C. §1601 *et seq.* (2010) ..........................................................................17

15 U.S.C. §1692 *et seq.* ........................................................................................1

15 U.S.C. §1692(e) ..................................................................................... 19, 30

15 U.S.C. §1692e ............................................................................. *passim*

15 U.S.C. §1692e(2) .............................................................................................5

15 U.S.C. §1692e(2)(A) .......................................................................................33

15 U.S.C. §1692e(5) ..................................................................................... 5, 34

15 U.S.C. §1692e(10) ................................................................................... 5, 34

15 U.S.C. §1692f ............................................................... *passim*

15 U.S.C. §1692f(1) ...................................................................34

15 U.S.C. §1692g ............................................................... 31, 33

15 U.S.C. §1692g(a) ...................................................................8

15 U.S.C. §1692k ....................................................................1

15 U.S.C. §1692*l*(a) ..................................................................29

15 U.S.C. §1692*l*(a) (2009) ...........................................................11

15 U.S.C. §1692*l*(d) ..................................................................29

15 U.S.C. §1692m(a) (2009) ...........................................................12

28 U.S.C. §1291 .....................................................................1

28 U.S.C. §1331 .....................................................................1

28 U.S.C. §1337 .....................................................................1

940 Code Mass. Reg. §7.07(24) ........................................................21

Fed.R.Civ.P. 12(b)(6) ............................................................. 3, 11

Mich. Comp. Laws §600.5807 ..........................................................4

N.C. Gen. Stat. §75-55(1) ............................................................21

N.M. Admin. Code §12.2.12.1 *et seq.* ..................................................21

P.L. 111-203, §1001 *et seq.*, 124 Stat. 1376, 1955 *et seq.* (July 21, 2010) ........ 9, 29

## REQUEST FOR ORAL ARGUMENT

Plaintiff-appellant respectfully submits that consideration of this appeal would benefit from oral argument, for the District Court's order conflicts with (a) the opinions of both the Federal Trade Commission and the Consumer Financial Protection Bureau on whether debt collectors' pursuit of time-barred debts violates the Fair Debt Collection Practices Act, and (b) decisions from other courts on that subject.  Explanation of the conflict, and addressing the Court's questions about it, would lead to a fully-informed resolution of the appeal.

## JURISDICTIONAL STATEMENT

Plaintiff-appellant Esther Buchanan sued under the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.* ("FDCPA").  The United States District Court for the Western District of Michigan (Neff, J.), had jurisdiction under 15 U.S.C. §1692k and 28 U.S.C. §§1331 and 1337.

On November 7, 2013, the District Court granted a motion to dismiss brought by defendant-appellee Northland Group Inc. ("Northland"), and entered judgment.  (Doc. 38, Page ID 567-575 ("Opinion"); Doc. 39, Page ID 576 ("Judgment").)  These orders disposed of all of Ms. Buchanan's claims.

On November 8, 2013, Ms. Buchanan filed a notice of appeal from the Opinion and Judgment, and all orders related to them.  (Doc. 40, PageID 577 ("Notice of Appeal").)  This Court has jurisdiction under 28 U.S.C. §1291.

## ISSUES PRESENTED FOR REVIEW

1.    Can the Fair Debt Collection Practices Act be violated by a collector seeking payment on a time-barred debt, even if no threat of suit is made in the collection attempt?

2.    Are the views of the Federal Trade Commission and Consumer Financial Protection Bureau on the Fair Debt Collection Practices Act, regarding attempts to collect time-barred debts that do not disclose that defense to consumers, entitled to deference?

3.    If a debt collector offers "settlement" of a debt in a collection letter, on terms it is "not obligated to renew," but fails to disclose that the debt is time-barred under state law, does that collector use false, misleading, deceptive or unfair means to attempt collection, contrary to the Fair Debt Collection Practices Act?

## STATEMENT OF THE CASE

Esther Buchanan sued Northland on September 21, 2012. She alleged that Northland sought collection of a defaulted consumer debt, through a collection letter offering "settlement" of the debt on terms that might not be renewed.  The letter also stated that interest would continue to accrue absent payment.  However, Northland did not disclose that the alleged debt was time-barred under Michigan law.  Ms. Buchanan claimed this was a deceptive and unfair practice, in violation of the Fair Debt Collection Practices Act.  (Doc. 1, PageID 1-6 ("Complaint").)

After a pre-motion conference, Northland sought dismissal for failure to state a claim, under Fed.R.Civ.P. 12(b)(6).  (Doc. 19, PageID 40-41 ("Motion"); Doc. 20, PageID 42-59 ("Memorandum").  See Doc. 21, PageID 60-82 ("Response"); and Doc. 22, PageID 371-384 ("Reply").)  After briefing, the parties submitted supplemental material.

On November 7, 2013, the District Court dismissed the complaint and entered judgment.  On November 8, 2013, Ms. Buchanan filed a Notice of Appeal from the Opinion, the Judgment and all other orders relating to their entry.

## STATEMENT OF FACTS

### A.    Ms. Buchanan's claim

On October 12, 2011, Northland sent to Ms. Buchanan a letter seeking

collection of a debt allegedly originated by National City Bank, owned by LVNV

Funding LLC, and incurred for personal, family or household purposes.  (Doc. 1-1,

PageID 7 ("Letter").  See Complaint, PageID 2, ¶¶10-11.)  The date of default, and

of the last payment, on the debt was before October 12, 2005.  (Complaint, PageID

2, ¶12.)  Therefore, the debt was beyond the limitations period set by Mich. Comp.

Laws §600.5807:

> **No person may bring or maintain any action to recover damages or sums due for breach of contract, or to enforce the specific performance of any contract unless, after the claim first accrued to himself or to someone through whom he claims, he commences the action within the periods of time prescribed by this section…. The period of limitations is 6 years for all… actions to recover damages or sums due for breach of contract [besides those specified in this section].**[1]

The Letter did not disclose that the debt was time-barred, and did not

disclose the dates of transactions creating the alleged obligation.  (Complaint,

PageID 2, ¶¶15-16.)  Instead, the Letter declared that Ms. Buchanan owed money

and that, absent payment, interest would accrue daily.  (Letter.)  The Letter also

said the creditor was "willing to reduce your balance by offering you a settlement"

---

[1]  Mich. Comp. Laws §600.5807 lists seven specific types of contracts with different statutes of limitations; these include mortgages and several types of sureties and bonds.  None of these are relevant here.

of the alleged debt, which Northland said it was "not obligated to renew." (*Id.*)
According to the Letter, payment of the settlement amount would lead Northland
to close the account and send a "settlement letter." (*Id.*)

Ms. Buchanan claimed that the Letter's "settlement offer" made Northland's
failure to disclose that the debt was time-barred more harmful, because

> [an] offer to settle implies a colorable obligation to pay. Statements in the
> letter that "the current creditor is willing to reduce your balance," and that
> defendant "[is] not obligated to renew this offer," falsely represents that (a)
> the full balance is enforceable, (b) the settlement represents an improvement
> on the position that the consumer is in (when in fact she is not required to
> pay anything on a time-barred debt), and (c) failure to accept the settlement
> will lead to the enforcement of the full balance. [Complaint, PageID 3, ¶21.]

By sending the Letter, Northland used false representations in its collection
attempts, contrary to 15 U.S.C. §§1692e, 1692e(2), 1692e(5) and 1692e(10):

> **A debt collector may not use any false, deceptive, or misleading
> representation or means in connection with the collection of any debt.
> Without limiting the general application of the foregoing, the following
> conduct is a violation of this section….**
>
> > **(2)     The false representation of –**
> >
> > > **(A)     the character, amount, or legal status of any debt….
> > > [or]**
> >
> > **(5)     The threat to take any action that cannot legally be taken or
> > that is not intended to be taken…. [or]**
> >
> > **(10)     The use of any false representation or deceptive means to
> > collect or attempt to collect any debt or to obtain
> > information concerning a consumer….**

Northland also violated 15 U.S.C. §1692f, for

> **[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt….**

## B.    *The motion to dismiss*

Northland moved to dismiss, claiming that the expiry of the limitations period "does not affect the validity of plaintiff's debt or whether defendant can send a letter requesting payment of the debt." Northland argued, among other things, that disclosing that the debt was time-barred, or the dates of transactions on the debt, was not required, and that the offer of settlement did not violate the FDCPA. (Motion, PageID 40-41, ¶2.)

In response, Ms. Buchanan urged the Court to adopt the different conclusion reached by the Federal Trade Commission ("FTC") and the Consumer Financial Professional Bureau ("CFPB"). A FTC report from January 2013 – titled "The Structure and Practices of the Debt Buying Industry" – found that

> [debt] collectors, including debt buyers, may violate the law not only if they file an action to collect on time-barred debt, but also if they engage in deception in collecting on time-barred debt. When collectors attempt to recover on debts, in many circumstances, such efforts may convey or imply to consumers that the collectors could sue them if they do not pay. If the debts are time-barred, this message would be false or misleading, because the collectors in fact cannot legally file an action against them if they do not pay. Information about the consequences of not paying debts being collected appears to be important to consumers in deciding whether to pay debts and in what order to pay debts. [Response, PageID 70; see Doc. 21-2, PageID 272-273.]

6

The CFPB, in its annual report on the FDCPA in March 2013, found that,

> even in the absence of any affirmative representations that consumers will be sued to collect time-barred debt, merely attempting to collect on [time-barred] debt may lead consumers to believe that such suits may occur. Misleading consumers in this way would violate [15 U.S.C. §45] and [15 U.S.C. §1692e]. [Doc. 34-1, PageID 445-501 ("*CFPB 2013 Annual FDCPA Report*"), at 477-478.]

The Federal Deposit Insurance Corporation ("FDIC"), the Federal Reserve Board, and the Office of the Comptroller of the Currency take similar views. (Response, PageID 70-71.) Ms. Buchanan argued that opinions such as these, with regulatory and adjudicative actions, represented the opinion of agencies charged with enforcing the FDCPA, and were entitled to deference either under *Chevron USA Inc. v. Natural Resources Defense Council Inc.*, 467 U.S. 837 (1984), or *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).

Further, courts have held that seeking collection of time-barred debts violated the FDCPA. *McRill v. Nationwide Credit Inc.*, No. 2:12CV2175, 2012 WL 6727974, *5 (C.D.Ill. Dec. 6, 2012), held that

> it is plausible that, even absent a threat of litigation, a collection letter that fails to disclose that a debt is time-barred, or the dates of the transactions giving rise to the debt (which would, at least, give the consumer some idea of how old the debt was), would deceive at least a significant fraction of the population as to the character and legal status of the debt by creating the impression that the debt collector could sue to collect.

See, *e.g.*, *Rawson v. Source Receivables Management LLC*, No. 1:11CV8972, 2012 WL 3835096, *2 (N.D.Ill. Sept. 4, 2012) and *Delgado v. Capital*

*Management Services Inc.*, No. 4:12CV4057, 2013 WL 1194708, *3-*7 (C.D.Ill.

March 22, 2013), appeal pending, *Delgado v. Capital Management Services Inc.*,

No. 13-2030 (7th Cir.).

**C.    *The Opinion***

In granting the motion to dismiss, the Court held that whether a debt is time-

barred, and when the last payment on the debt was made, did not need to be

disclosed because such disclosures are not expressly required in initial collection

communications, under 15 U.S.C. §1692g(a).  (Opinion, PageID 571-572.)

Further, the Court held that a "moral obligation" to pay a debt may remain, even

though a suit could not be brought on a debt collector's claim; thus, actions by a

debt collector short of suing would be proper.  (*Id.*, PageID 572.)  The Court also

found that the opinions of federal agencies "do not call on courts to read the

FDCPA one way or another."  (*Id.*)  Relying on cases like *Lewis v. v. ACB*

*Business Services Inc.*, 135 F.3d 389, 399 (6th Cir. 1998), the Court held the

settlement offer within the Letter did not violate the FDCPA.  Ms. Buchanan

appeals from this decision.

## SUMMARY OF ARGUMENT

The findings of the FTC and the CFPB given to the District Court, regarding the propriety of seeking collection on time-barred debts, were entitled to deference, but received none.  This was error.

The FTC has been "in a better position than are courts to determine when a practice is deceptive…. [Its] judgment is to be given great weight…." *Federal Trade Commission v. Colgate-Palmolive Co.*, 380 U.S. 374, 384-385 (1965). Responsibility for the FDCPA is now shared between the FTC and the CFPB under the Dodd-Frank Act, which gave the CFPB rulemaking authority over collectors. (P.L. 111-203, §1001 *et seq.*; 124 Stat. 1376, 1955 *et seq.* (July 21, 2010)).

Research conducted by the FTC and CFPB, and the resulting findings, show their views on the legality of pursuing time-barred debt is "based on a permissible construction" of the FDCPA.  Under *Chevron*, 467 U.S. at 843, and *Arlington v. Federal Communications Commission*, 133 S.Ct. 1863, 1874-1875 (2013), the FTC and CFPB findings are entitled to *Chevron* deference.

In an *amici curiae* brief filed in *Delgado v. Capital Management Services LP*, No. 13-2030 (7th Cir. Aug. 14, 2013) (Doc. 35-1, PageID 530-561 ("FTC-CFPB *Delgado* Brief")), both agencies found that "an unsophisticated consumer may well have a preexisting belief that 'settlement' and litigation are mutually exclusive options, such that rejecting a formal offer of 'settlement' will result in a

lawsuit." (*Id.*, PageID 557.) This follows enforcement actions they have taken against collectors. Under *Auer v. Robbins*, 519 U.S. 452, 461 (1997) and *Chase Bank USA NA v. McCoy*, 131 S.Ct. 871, 880 (2011), a Court "[defers] to an agency's interpretation of its own regulation, advanced in a legal brief, unless that interpretation is plainly erroneous or inconsistent with the regulation." (Internal quotation marks omitted.)

At the least, these agencies' views are entitled to respect, under *Solis v. Laurelbrook Sanitarium & School Inc.*, 642 F.3d 518, 525 (6th Cir. 2011) (citing *Skidmore*, 323 U.S. at 140). Yet the District Court found that the findings of the FTC and CFPB "do not call on courts to read the FDCPA one way or another." The principles stated in *Chevron*, *Skidmore*, and other cases provide otherwise.

The District Court erred for a second reason, by reading the FDCPA's disclosure requirements too narrowly. Under the "least sophisticated consumer" standard expressed in *Kistner v. Law Offices of Michael P. Margelefsky LLC*, 518 F.3d 433, 438-441 (6th Cir. 2008), and other cases, disclosures beyond those expressly required by the FDCPA may need to be made, if non-disclosure would make a communication false, deceptive, misleading or unfair contrary to 15 U.S.C. §§1692e and 1692f. Here, disclosure of information showing that a lawsuit could not be brought was necessary, in light of statements in the Letter. The District Court was wrong to hold to the contrary.

**ARGUMENT**

## I.    STANDARD OF REVIEW

Under *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 444 (6th Cir. 2012), this Court reviews Fed.R.Civ.P. 12(b)(6) dismissals *de novo*. "We construe the complaint in the light most favorable to the plaintiff, accept its allegations as true… draw all reasonable inferences in favor of the plaintiff…. [and] consider the factual allegations… to determine if they plausibly suggest an entitlement to relief." *Id.* (citations and internal punctuation omitted).

## II.    THE VIEWS OF THE FEDERAL TRADE COMMISSION AND THE CONSUMER FINANCIAL PROTECTION BUREAU MUST BE GIVEN DEFERENCE

The FTC and the CFPB hold that (1) the FDCPA may be violated by the collection of time-barred debts even without a threat of a suit, and (2) a settlement offer in a collection letter, without a clear disclosure that the debt is time-barred, may be unfair and deceptive. Those views deserved *Chevron* deference, or at least *Skidmore* deference. The District Court erred by giving neither.

### A.    *The FTC*

Before the Dodd-Frank Act, the FTC had exclusive authority to enforce the FDCPA. 15 U.S.C. §1692*l*(a) (2009). It now shares those duties with the CFPB. It has exercised that power by bringing dozens of suits against collectors. (See Doc. 21-1, PageID 182-183.) It has also conducted numerous studies, and issued

11

reports, on the industry.  (See Doc. 21-1, PageID 140-186 ["Collecting Consumer Debts: The Challenges of Change – A Workshop Report" (February 2009) ("*Collecting Consumer Debts – 2009*")]; Doc. 21-2, PageID 187-207 [Excerpts of "Repairing a Broken System: Protecting Consumers in Debt Collection Litigation and Arbitration (July 2010) ("*Repairing A Broken System – 2010*")]; and Doc. 21-2, PageID 218-276 [Excerpts of "The Structure and Practices of the Debt Buying Industry" (January 2013) ("*Structure & Practices – 2013*")].  See also 15 U.S.C. §1692m(a) (2009) (reports to Congress).)

Such actions are in line with its authority, under 15 U.S.C. §45, to investigate and rectify false, deceptive and unfair trade practices.  In this, the FTC is highly qualified.  In *Colgate-Palmolive*, *supra*, 380 U.S. at 384-385, the Supreme Court held that "the Commission is often in a better position than are courts to determine when a practice is 'deceptive' within the meaning of the Act. This Court has frequently stated that the Commission's judgment is to be given great weight by reviewing courts."  *Accord*, *Clifford Steers & Shenfield Inc. v. FTC*, 392 F.2d 921, 925 (6th Cir. 1968) ("reviewing courts are admonished that in cases involving allegedly deceptive advertising the Commission's judgment is to be accorded especial deference") and *Williams Co. v. Federal Trade Commission*, 381 F.2d 884, 889 (6th Cir. 1967) ("it is the [FTC's] function to find... facts [and consider ability of advertising to mislead] and a court should not disturb its

determination unless the finding is arbitrary or clearly wrong"). See *Durham v. Brock*, 498 F.Supp. 213, 220 (M.D.Tenn. 1980), *aff'd*, 698 F.2d 1218 (6th Cir. 1982) (the FTC "may look both to the meaning of the words and all that is reasonably implied, not only to a careful reader, but... [also] the ignorant, unthinking, and credulous").

When dealing with attempts to collect time-barred debts, the FTC has attacked the practice as an unfair and false method to obtain payment from consumers. The District Court held that Ms. Buchanan's citation to these actions were not relevant, for those actions "do not call on courts to read the FDCPA one way or another, but only highlight a variety of concerns with potential reforms." (Opinion, PageID 572-573.) This was incorrect.

### 1.    *Reports by the FTC*

For several years, the FTC has performed studies, and held roundtable conferences, regarding debt collection practices. The FTC said this in its most recent report:

> Debt collectors, including debt buyers, may violate the law not only if they file an action to collect on time-barred debt, but also if they engage in deception in collecting on time-barred debt. **When collectors attempt to recover on debts, in many circumstances, such efforts may convey or imply to consumers that the collectors could sue them if they do not pay. If the debts are time-barred, this message would be false or misleading, because the collectors in fact cannot legally file an action against them if they do not pay.** Information about the consequences of not paying debts being collected appears to be important to consumers in deciding whether to

13

pay debts and in what order to pay debts.  [*Structure & Practices – 2013*, PageID 272-273 (emphasis added).]

This conclusion was reached after the FTC studied thousands of portfolios of debt purchased by nine large debt buyers, and found that (a) about 12% of all debts in those portfolios were over six years old (*i.e.*, debts that, if allegedly owed by Michigan consumers, would be time-barred), and (b) debt buyers have, or can obtain, information sufficient to advise them of the age of the debts they are buying.  Its findings were also based on its experience, including a suit brought against a Michigan debt buyer, Asset Acceptance LLC (discussed *infra*), as well as "more than 80 law enforcement actions over more than three decades alleging illegal debt collection practices, including actions against debt buyers, [and] a robust history of conducting research and policy work related to debt collection issues."  (*Structure & Practices – 2013*, PageID 225-226, 233-236, 269, 275.)

*Structure & Practices – 2013* was not the first time the FTC criticized collectors who seek payment on time barred debts.  *Repairing a Broken System – 2010* said this:

> The Commission takes no position on whether the FDCPA should be amended to preclude collectors from collecting debt that they know or should know is time-barred. Nevertheless, because most consumers do not know or understand their legal rights with respect to the collection of time-barred debt, the Commission believes that in many circumstances such a collection attempt may create a misleading impression that the collector can sue the consumer in court to collect the debt, in violation of [15 U.S.C. §§45 and 1692e].  **To avoid creating this misleading impression, collectors would need to disclose clearly and prominently to consumers before**

14

> **seeking payment on such time-barred debt that, because of the passage
> of time, they can no longer sue in court to collect the debt or otherwise
> compel payment.** [PageID at 202-203 (emphasis added).]

And, in 2009, based upon workshops it held with collectors and consumer

advocates, the FTC found that "there is a consensus that suing or threatening to sue

to collect time-barred debt is unlawful and unethical for debt collectors."

(*Collecting Consumer Debts – 2009*, PageID 180.)

> 2.    *The Delgado amici brief*

The FTC – joined by the CFPB – filed an *amici curiae* brief in *Delgado v.*

*Capital Management Services LP* No. 13-2030 (7th Cir. Aug. 14, 2013). The

*Delgado* case is directly on-point, as the letter there

> offered a "settlement" of the debt, stating that Capital "is authorized to
> accept less than the full balance due as settlement of the above account."
> The letter also stated, "The settlement amount of $721.24, which represents
> 30% of the amount presently owed, is due in our office no later than forty-
> five (45) days after receiving this notice," and represented that Capital "is
> not obligated to renew this offer." The parties agree that, though Capital's
> letter did not say so, the statute of limitations for filing an action to collect
> the debt had run. [FTC-CFPB *Delgado* Brief, PageID 542.]

This letter is almost exactly like the one sent to Ms. Buchanan. (Compare *id*. to

Letter, and Statement of Facts, *supra*, at 4-5.)

Regarding the pursuit of time-barred debts, the FTC-CFPB *Delgado* Brief

said that

> in some circumstances "a debt collector may seek voluntary payment of a
> time-barred debt" without violating the FDCPA, even if the communication
> is silent as to the statute of limitations. *Wallace v. Capital One Bank*, 168

F.Supp.2d 526, 528 (D.Md. 2001).  However, the "contact between a debt collector and a debtor" will violate the FDCPA if it explicitly or implicitly "represents that the debt collector can sue on the debt" or otherwise violates the FDCPA's prohibitions. See *id.* [and *Kimber v. Federal Financial Corp.*, 668 F.Supp. 1480, 1489 (M.D.Ala. 1987)]. [FTC-CFPB *Delgado* Brief, PageID 549-550 (internal punctuation omitted).]

The FTC and CFPB found that suing or threatening to sue on time-barred debts violated the FDCPA.  (*Id.*, PageID 550-551.)  The agencies also found that "some attempts to collect stale debts – unaccompanied by any threat of suit – may be misleading…." (*Id.*, PageID 552.)  As they explained (*id.*, PageID 552-555):

> The "critical issue" is not simply whether there has been an actual or threatened lawsuit, but whether the unsophisticated consumer would be misled or deceived by the debt collector's conduct…. [*Structure & Practices – 2013*, PageID 272-273.]

> [The FTC] has concluded that consumers can be misled or deceived when debt collectors seek partial payments on stale debt. [*Repairing A Broken System – 2010*, PageID 202-203; *Structure & Practices – 2013*, PageID 273.]  In most states, a partial payment restarts the statute of limitations for the entire amount of the debt. [*Structure & Practices – 2013*, PageID 273, and 273 n.195 (collecting cases).] The Commission observed that "consumers do not expect" that a partial payment "will have the serious, adverse consequence of starting a new statute of limitations." [*Repairing A Broken System – 2010*, PageID 204.]

> Accordingly, the Commission concluded that a debt collector's solicitation of a partial payment on a time barred debt – implying, incorrectly, that the payment will *reduce* the consumer's legal obligation – can "create a misleading impression as to the consequences of making a payment," thereby violating the FDCPA, 15 U.S.C. §1692e. [*Repairing A Broken System – 2010*, PageID 204.]  The Commission stated that "to avoid creating a misleading impression, collectors would need to disclose clearly and prominently to consumers prior to requesting or accepting such payments that (1) the collector cannot sue to collect the debt and (2) providing a partial

payment would revive the collector's ability to sue to collect the balance." *Id.*

In sum, the debt collector need not make an overt threat or a false or misleading representation about the debt to violate the FDCPA. Rather, the court must consider a practice's effect on unsophisticated consumers from their perspective – for example, in light of circumstances such as their prior collections experience and any preexisting misconceptions. In particular, it will often be relevant that most consumers do not know or understand their legal rights with respect to time-barred debt. See [*Repairing A Broken System – 2010*, PageID 202 and *Kimber*, 668 F.Supp. at 1486-1488] ("Few unsophisticated consumers would be aware that a statute of limitations could be used to defend against lawsuits based on stale debts," and "would unwittingly acquiesce to such lawsuits."). In some circumstances, a debt collector may be required to make affirmative disclosures in order to avoid misleading consumers. [Emphasis in original; citations and punctuation omitted.]

*Chase Bank USA NA v. McCoy*, 131 S.Ct. 871, 880-882 (2011) – a case

where the Federal Reserve Board interpreted Regulation Z (12 C.F.R. §226.1 *et*

*seq.* (2010)), which implemented the Truth in Lending Act (15 U.S.C. §1601 *et*

*seq.* (2010)) – held that, "under *Auer v. Robbins*, [519 U.S. 452 (1997)], [courts]

defer to an agency's interpretation of its own regulation, advanced in a legal brief,

unless that interpretation is 'plainly erroneous or inconsistent with the regulation.'

[*Id.* at 461, (internal quotation marks omitted)]. Because the interpretation the

Board presents in its brief is consistent with the regulatory text, we need look no

further in deciding this case." Given the congruence of arguments raised in the

FTC-CFPB *Delgado* Brief with the FDCPA's consumer protection objectives, and

the arguments' reliance on two well-researched FTC reports, the views of the

agencies should have received deference from the District Court, but did not.

### 3.     The suit against Asset Acceptance

On January 30, 2012, the FTC sued Asset Acceptance LLC, a large debt

buyer, claiming it tried to collect time-barred debts without a disclosure.  (Doc. 21-

1, PageID 107-136 (Complaint in *United States v. Asset Acceptance LLC*, No.

8:12CV182 (M.D.Fla.) ("*Asset Acceptance*"), Doc. 1).)  The FTC alleged (*id.*,

PageID 116-117) that "a large percentage of the individual accounts it collects are

past the statute of limitations," that out-of-statute debts "can be revived in many

states if the consumer either makes a payment on the debt or states, in writing, an

intention to pay it," and that this basically tricks consumers into waiving a defense:

> Many consumers do not know if the accounts that Asset is attempting to
> collect are beyond the statute of limitations. Consumers also do not realize
> that making a partial payment on a debt, or making a written promise to pay
> will, in many instances, revive the debt. When Asset contacts consumers to
> collect on a debt, many consumers believe they could experience serious
> negative consequences, including being sued, if they fail to pay the debt.
> Similarly, many consumers believe that making a partial payment on a debt
> in response to Asset's collection efforts is a positive action that can avert the
> negative consequences of nonpayment. **If consumers knew, in connection**
> **with a past-statute debt, that Asset had no legal means to enforce**
> **collection of the debt, or understood that making a partial payment or a**
> **written to promise to pay would revive it, some consumers would likely**
> **choose not to make a payment or a written promise to pay.** [Emphasis
> added.]

Agencies may regulate industries through suits.  *Securities & Exchange*

*Commission v. Chenery Corp.*, 332 U.S. 194, 203 (1947), held that agencies

18

…must retain power to deal with… problems on a case-to-case basis if the administrative process is to be effective. There is thus a very definite place for the case-by-case evolution of statutory standards. And the choice made between proceeding by general rule or by individual, *ad hoc* litigation is one that lies primarily in the informed discretion of the administrative agency.

*Accord*, *United States v. Cinemark USA Inc.*, 348 F.3d 569, 580 (6th Cir. 2003);

see *Trans Union Corp. v. Federal Trade Commission*, 81 F.3d 228, 230-231 (D.C.

Cir. 1995) (deference given to FTC adjudications).

The decision of an agency to file a complaint represents its construction of the statutes, even if the proceeding is resolved by a consent decree. *Federal Trade Commission v. Mandel Brothers Inc.*, 359 U.S. 385, 391 (1959). See *Alaska v. O'Neill Investigations Inc.*, 609 P.2d 520, 529 (Alaska 1980) (similar). That was the result here: a consent decree which enjoined Asset Acceptance from attempting to collect time-barred debts without disclosing that "the law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it…." (*Asset Acceptance* Doc. 5, PageID 102-107 (Part IV of Consent Decree).)[2]

---

[2] One problem with the District Court's ruling is that it sets up a two-level system for FDCPA compliance. Asset Acceptance must, under the consent order, disclose when it is attempting to collect a time-barred debt. Other debt collectors, however, might rely upon the District Court's finding that a disclosure is not necessary – thus putting Asset Acceptance at a disadvantage. This is contrary to the FDCPA's intent; one stated purpose of the law was to level the playing field, between collectors who treat consumers fairly and those who do not. 15 U.S.C. §1692(e).

**B.       The CFPB, and other federal and state agencies**

Under the Dodd-Frank Act, responsibility over the enforcement and
interpretation of the FDCPA is now shared between the FTC and the CFPB – with
the CFPB also having authority to promulgate rules for FDCPA compliance.  In
line with its responsibilities, the *CFPB 2013 Annual FDCPA Report* – which relied
upon the work done by the FTC in its discussion of an action taken against another
debt buyer – said this:

> In August 2012, the FTC's staff closed its investigation of RJM Acquisitions
> LLC ("RJM") for possible FDCPA violations concerning time-barred debt.
> RJM is a debt buyer that attempts to collect on debts it purchases from
> original creditors, some of which are time-barred. The staff's closing letter
> explained that, even in the absence of any affirmative representations that
> consumers will be sued to collect time-barred debt, merely attempting to
> collect on such debt may lead consumers to believe that such suits may
> occur. **Misleading consumers in this way would violate [15 U.S.C. §45]
> and [15 U.S.C. §1692e].**  In its closing letter to RJM, FTC staff noted that
> RJM had added a disclosure to its collection letters to avoid consumers
> taking away the impression that they can be sued to collect on time-barred
> debt.  (PageID 477-478 (emphasis added).]

This report shows two things.  First, the CFPB intends to follow the path the
FTC has followed for years; it cited to the FTC's findings, and actions, with
approval.  Second, RJM relied upon the conduct of the FTC's investigation to the
extent that it acted to make the disclosures missing from the Letter here.  Northland
did likewise, placing such disclosures in its letters starting in January 2013.
(Response, PageID 78; Doc. 21-3, PageID 370.)

The CFPB has taken action with other agencies – the FDIC, the Federal Reserve, and the Office of the Comptroller of the Currency – to require that creditors disclose whether debts are time barred.  These agencies entered into three consent orders with American Express ("AmEx") on October 1, 2012, which require AmEx to "provide disclosures concerning the expiration of… litigation rights when collecting debt that is barred by applicable state statutes of limitations," and to advise those to whom AmEx sells or assigns the debts of this requirement. Under the order, the CFPB and FDIC have authority to enforce compliance.  (Doc. 21-2 and 21-3, PageID 277-350.)

Such actions have been supplemented by state enforcement of debt collection statutes – whether by statute in North Carolina (N.C. Gen. Stat. §75-55(1)), by regulation in Massachusetts, New Mexico and New York City (940 Code Mass. Reg. §7.07(24), N.M. Admin. Code §12.2.12.1 *et seq.* and 6 N.Y. City R. §2-191), or by litigation in Minnesota (*Minnesota v. Midland Funding LLC*, No. 27-CV-11-11510 (Hennepin Co. (Minn.) Dist. Ct.).  (Response, PageID 70-71; Doc. 21-3, PageID 351-369 (Minnesota consent decree).)  These state actions show that actions by the FTC and CFPB are not based on an irrational view of the law.

### C.    *Deference in light of the actions of the FTC, CFPB and others*

The FTC, the CFPB and other agencies have been studying the issue before the Court for years.  They have spoken directly on the circumstances presented

21

here – a letter that does not explicitly threaten litigation but suggests the debt is enforceable. When comparing the Letter here to the correspondence discussed in the FTC-CFPB *Delgado* brief, one can see what the reaction of the FTC and CFPB would be. The position of the FTC and the CFPB must be respected by the courts.

*Chevron*, 467 U.S. at 843-845, held:

> If [a] statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute. The power of an administrative agency to administer a congressionally created… program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress. **If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute. Sometimes the legislative delegation to an agency on a particular question is implicit rather than explicit. In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.**

> We have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations…. "has been consistently followed by this Court whenever decision as to the meaning or reach of a statute has involved reconciling conflicting policies, and a full understanding of the force of the statutory policy in the given situation has depended upon more than ordinary knowledge respecting the matters subjected to agency regulations. If this choice represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute, we should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned. [Emphasis added.]

The interpretations of the FTC and CFPB are not arbitrary, capricious or unreasonable. They have come after years of study and discussion of the issue. The latest statement on the matter, coming in the FTC-CFPB *Delgado* Brief (PageID 552-555), is that

> the "critical issue" is not simply whether there has been an actual or threatened lawsuit, but whether the unsophisticated consumer would be misled or deceived by the debt collector's conduct.... [Consumers] can be misled or deceived when debt collectors seek partial payments on stale debt... [for] "consumers do not expect" that a partial payment "will have the serious, adverse consequence of starting a new statute of limitations." Accordingly, the Commission concluded that a debt collector's solicitation of a partial payment on a time barred debt – implying, incorrectly, that the payment will reduce the consumer's legal obligation – can "create a misleading impression as to the consequences of making [a] payment," thereby violating the FDCPA....

The FDCPA bans collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. §1692e. The FDCPA also prohibits "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. §1692f. The same terms ("deceptive" and "unfair") can be found in the Federal Trade Commission Act, 15 U.S.C. §41 *et seq.* There is not an inch of ground between these statutory terms and the meaning given to them by the FTC and the CFPB, in their various studies, writings and enforcement actions.

*Carter v. Welles-Bowen Realty Inc.*, 736 F.3d 722, 726-727 (6th Cir. 2013), noted that *Chevron* deference "comes into play only when an agency offers a

binding interpretation of a statute that it administers." That is the case here. After years of research, the FTC and CFPB have declared that collection of time-barred debts may be deceptive even absent a threat of suit, and that the terms used in the Letter considered here can be misleading to an unsophisticated consumer. (FTC-CFPB *Delgado* Brief, PageID 552-553.) This interpretation governed the FTC's enforcement actions against Asset Acceptance and RJM Acquisitions, and the AmEx consent decrees pursued by the CFPB, FDIC, Federal Reserve and the Office of the Comptroller of the Currency. Whereas *Carter* found that an agency's policy statements and recommendations do not qualify for *Chevron* deference, the actions taken by the FTC and CFPB are concrete applications of their interpretation of the FDCPA, and qualify for *Chevron* treatment.

Further, deference under the *Skidmore* standard is more than appropriate. As restated in *Laurelbrook Sanitarium*, *supra*, 642 F.3d at 525,

> under so-called *Skidmore* deference, an agency's "policy statements,
> embodied in its compliance manual and internal directives," which interpret
> regulations and statutes the agency is charged with enforcing are entitled to a
> "measure of respect." [*Federal Express Corp. v. Holowecki*, 552 U.S. 389,
> 399 (2008).] "The weight [given an administrative] judgment in a particular
> case will depend upon the thoroughness evident in its consideration, the
> validity of its reasoning, its consistency with earlier and later
> pronouncements, and all those factors which give it power to persuade, if
> lacking power to control." [*Skidmore*, 323 U.S. at 140.]

Was the consideration of the legality of collection of time-barred debts, without a disclosure, by the FTC and CFPB thorough? It was. Was the conclusion

24

reached by these agencies valid and consistent with prior findings?  Yes.  Was the conclusion persuasive, in light of the total ban on false, deceptive, misleading and unfair debt collection methods found in 15 U.S.C. §§1692e and 1692f?  Absolutely.  Therefore, if *Chevron* deference cannot be afforded, *Laurelbrook Sanitarium* requires the accordance of great weight and respect to the findings of the FTC and CFPB.  As held by *Bragdon v. Abbott*, 524 U.S. 624, 642 (1998), "the well-reasoned views of the agencies implementing a statute constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance."  (Internal quotation marks omitted.)

### D.    The District Court's error

The Opinion issued by the District Court showed neither deference nor respect to the views of the FTC and CFPB:

> Plaintiff proffers several policy-based reasons for a debt collector to nonetheless disclose "that the debt was time-barred" …but the authorities upon which it relies for these arguments, Federal Trade Commission documents in an unrelated case and two reports for reforming the debt collection system, do not call on courts to read the FDCPA one way or another, but only highlight a variety of concerns with potential reforms. See generally *Rice v. Midland Credit Mgmt., Inc.*, 933 F.Supp.2d 1040, 1048 (N.D.Ill. 2013) (ultimately concluding that these authorities are "too general and equivocal to convince the Court that it should conclude that Plaintiff has stated a claim in this case").  [Opinion, PageID 572-573.]

Ms. Buchanan respectfully submits that the preceding recitation the work of the FTC and the CFPB show their actions do not merely "highlight a variety of concerns with potential reforms," but instead give direction as to how debt

25

collectors ought to operate in order to avoid making false, misleading or unfair

representations.

As the FTC and CFPB have recognized, and as this Court has repeatedly

held, whether there is FDCPA compliance is viewed through the lens of the least-

sophisticated consumer. *Kistner*, *supra*, 518 F.3d at 438-439, held that the test

> is objective and is designed "to ensure that the FDCPA protects all
> consumers, the gullible as well as the shrewd." *Fed. Home Loan Mortgage
> Corp. v. Lamar*, 503 F.3d 504, 509 (6th Cir.2007) (quoting *Clomon v.
> Jackson*, 988 F.2d 1314, 1318 (2d Cir.1993)). "[Although] this standard
> protects naive consumers, it also prevents liability for bizarre or
> idiosyncratic interpretations of collection notices by preserving a quotient of
> reasonableness and presuming a basic level of understanding and willingness
> to read with care." *Id.*[3]

See *Wallace v. Washington Mutual Bank FA*, 683 F.3d 323, 326-327 (6th Cir.

2012) (discussing materiality standard holding that "in addition to being

technically false, a statement would tend to mislead or confuse the reasonable

unsophisticated consumer."

For years, the FTC and the CFPB have found that such an unsophisticated

consumer would not realize that paying on a time-barred debt would extinguish a

---

[3] *Johnson v. Revenue Management Corp.*, 169 F.3d 1057, 1060 (7th Cir.1999),
noted that "what seems pellucid to a judge, a legally sophisticated reader, may be
opaque to someone whose formal education ended after sixth grade." This is why
the views of the FTC and CFPB, who perform studies on such subjects, are to be
given deference and respect by courts, for it is their job to know, and within their
expertise to learn, the answers to such questions.

defense on that ground to any suit that might be brought. *Repairing a Broken System – 2010* (PageID 202) said that,

> because most consumers do not know or understand their legal rights with respect to the collection of time-barred debt, the Commission believes that in many circumstances such a collection attempt may create a misleading impression that the collector can sue the consumer in court to collect the debt, in violation of [15 U.S.C. §§45 and 1692e].

In 2012, the FTC stated in its *Asset Acceptance* complaint (PageID 117) that

> many consumers believe that making a partial payment on a debt in response to Asset's collection efforts is a positive action that can avert the negative consequences of nonpayment. If consumers knew, in connection with a past-statute debt, that Asset had no legal means to enforce collection of the debt, or understood that making a partial payment or a written to promise to pay would revive it, some consumers would likely choose not to make a payment or a written promise to pay.

Further, *Structure & Practices – 2013* (PageID 272-273) said this:

> When collectors attempt to recover on debts, in many circumstances, such efforts may convey or imply to consumers that the collectors could sue them if they do not pay. If the debts are time-barred, this message would be false or misleading, because the collectors in fact cannot legally file an action against them if they do not pay. Information about the consequences of not paying debts being collected appears to be important to consumers in deciding whether to pay debts and in what order to pay debts.

Following its action against AmEx in 2012 (PageID 277-350), the *CFPB 2013 Annual FDCPA Report* (PageID 477-478) said that,

> even in the absence of any affirmative representations that consumers will be sued to collect time-barred debt, merely attempting to collect on such debt may lead consumers to believe that such suits may occur. Misleading consumers in this way would violate [15 U.S.C. §45] and [15 U.S.C. §1692e].

And the FTC and CFPB, joining forces in August 2013, said in their *amici* brief in *Delgado* (PageID 552-555) that

> the debt collector need not make an overt threat or a false or misleading representation about the debt to violate the FDCPA….. In particular, it will often be relevant that most consumers do not know or understand their legal rights with respect to time-barred debt…. In some circumstances, a debt collector may be required to make affirmative disclosures in order to avoid misleading consumers.

The District Court's claim that the actions of the FTC and CFPB "do not call on courts to read the FDCPA one way or another" (Opinion, PageID 572) cannot be sustained.  It was reasonable for the FTC, the CFPB and others to conclude that attempts to collect a time-barred debt would violate the FDCPA, even if no threat of suit is made.  The actions taken on that conclusion were also reasonable.  The reading of the FDCPA, and these agencies' findings, given by the District Court was not.  As held by *In re TJX Companies Retail Security Breach Litigation*, 564 F.3d 489, 497 (1st Cir. 2009), "where… a substantial body of FTC complaints and consent decrees focus on a class of conduct, it is hard to see why a court would choose flatly to ignore it."

This Court should not follow *Rice*, as the District Court did.  First, a fully-briefed motion to reconsider is pending.  On that motion, the Court will consider (for the first time) the *CFPB 2013 Annual Report*, and the FTC-CFPB *Delgado* Brief.  (*Rice v. Midland Credit Management*, No. 1:12CV1395 (N.D.Ill.), Doc. 67, PageID 469-482 (Motion to Reconsider); *Rice* Doc. 67-1, PageID 484-488

(Excerpts of *CFPB 2013 Annual Report*); and *Rice* Doc. 74-1, PageID 684-715

(FTC-CFPB *Delgado* Brief).)

Second, the Court in *Rice* will likely reconsider holdings which relied on the

fact that "the FTC does not have rulemaking power under the FDCPA, and so there

is not an express delegation of interpretive authority" to a regulating body. *Rice*,

933 F.Supp.2d at 1045. Under the Dodd-Frank Act, the CFPB *was* given such

rulemaking authority, concurrent with the enforcement authority of the FTC. 15

U.S.C. §§1692*l*(a) and 1692*l*(d) (as amended by P.L. 111-203, §§1089(3) and

1089(4); 124 Stat. 1376, 2092-2093 (July 21, 2010)). Its actions are not subject to

the current holding in *Rice*. At any rate, the holding is wrong; *Trans Union*, *supra*,

81 F.3d at 230, held that

> the FTC's apparent lack of rulemaking power under the Act does not seem
> to us in itself to make a solid case for withholding *Chevron* deference. First,
> we have extended *Chevron* deference to agency interpretive rules, see
> *Health Ins. Ass'n of Am. v. Shalala*, 23 F.3d 412, 424 n. 8 (D.C. Cir.1994)
> (citing cases); indeed, the rule at issue in *Chevron* itself appears to have been
> interpretive. See *American Mining Cong. v. Mine Safety & Health Admin.*,
> 995 F.2d 1106, 1108–12 (D.C. Cir.1993). And we have expressly held that
> *Chevron* deference extends to interpretations reached in adjudications as
> much as to ones reached in a rulemaking. *Midtec Paper Corp. v. United
> States*, 857 F.2d 1487, 1497 (D.C. Cir.1988).

Third, *Rice* came before a ruling in *Arlington*, *supra*, 133 S.Ct. at 1874-

1875, which expanded upon *Chevron* to say that, where Congress has given "a

general conferral of rulemaking or adjudicative authority…. [and exercises] that

authority within the agency's substantive field," deference should be given.

*Arlington* held that the Federal Communications Commission was "unambiguously vested… with general authority to administer the Communications Act through rulemaking and adjudication, and the agency interpretation at issue was promulgated in the exercise of that authority.  The Court concluded:

> where Congress has established a clear line, the agency cannot go beyond it; and where Congress has established an ambiguous line, the agency can go no further than the ambiguity will fairly allow. But in rigorously applying the latter rule, a court need not pause to puzzle over whether the interpretive question presented is "jurisdictional." If "the agency's answer is based on a permissible construction of the statute," that is the end of the matter.  [*Id.*]

Here, the actions of the FTC and CFPB lie within the bounds of the authority given to them.  Further, the CFPB is vested with rulemaking authority regarding the FDCPA.  The District Court erred by failing to pay heed to their actions.

## III.   THE DISTRICT COURT DID NOT READ THE FDCPA BROADLY TO PROTECT CONSUMERS, AS REQUIRED

Under 15 U.S.C. §1692(e), the purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged…."  In *Bridge v. Ocwen Fed. Bank FSB*, 681 F.3d 355, 362 (6th Cir. 2012), the court held that the FDCPA "is an extraordinarily broad statute. Congress addressed itself to what it considered to be a widespread problem, and to remedy that problem it crafted a broad statute. Our actions are guided by the hand of Congress, and thus we apply the Act broadly according to its

terms. Our sister circuits have done the same." See *Russell v. Goldman Roth Acquisitions LLC*, 847 F.Supp.2d 994, 1006 (W.D.Mich. 2012) (same). The District Court did not do this. Instead, the Opinion held that the set of disclosures required by 15 U.S.C. §1692g were the only disclosures that debt collectors must provide to consumers; "the statute does not require a debt collector to make or include a legal opinion on the expiration of the limitations period for filing suit, or even to identify the applicable limitations period at all." (Opinion, PageID 572.)

The general prohibition against "deceptive" or "unfair" debt collection methods, found in 15 U.S.C. §§1692e and 1692f, requires including statements in collection letters sufficient to make the correspondence not deceptive. This Court's holdings in *Williams*, *supra*, are instructive. The Court found a "deceptive act or practice," in violation of 15 U.S.C. §45, where the manufacturer of "Geritol" did not disclose that the product was useful only to the limited number of individuals deficient in one of the vitamins or minerals in it. The Court required an affirmative disclosure of "the negative fact that a great majority of persons who experience these symptoms do not experience them because there is a vitamin or iron deficiency." *Williams*, 381 F.2d at 888. The source of the deception was the consumer's unwarranted conclusion that the symptoms indicated a condition for which "Geritol" was effective:

> While the advertising does not make the affirmative representation that the majority of people who are tired and rundown are so because of iron

31

deficiency anemia and the product Geritol will be an effective cure, there is substantial evidence to support the finding of the [FTC] that most tired people are not so because of iron deficiency anemia, and the failure to disclose this fact is false and misleading because the advertisement creates the impression that the tried feeling is caused by something which Geritol can cure.  [*Id.* at 889.]

Under 15 U.S.C. §45, the concept of "deception" has long been held to require affirmative statements, if they are necessary to make the defendant's words or conduct not misleading.  As shown *supra*, the FTC has endorsed that approach as to collection of time-barred debts without disclosing that fact, as have the CFPB and other agencies.

There is a close relationship between the FDCPA and the Federal Trade Commission Act.  The FDCPA is a codification and expansion of the FTC Act's application to debt collection practices.  Under *Jerman v. Carlisle McNellie Rini Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010), "violations of the FDCPA are deemed to be unfair or deceptive acts or practices under the Federal Trade Commission Act…."  Conversely, "the FTC Act's administrative-penalty provisions [were] expressly incorporated into the FDCPA" by Congress.  *Id.* at 583.  See *Jeter v. Credit Bureau Inc.*, 760 F.2d 1168, 1173-1175 (11th Cir. 1985) (discussing FTC regulations in 1967 regarding deception in debt collection, and judging it in the eyes of the "least sophisticated consumer," which were precursor to the FDCPA).

Therefore, it is wrong to conclude that the disclosures found in 15 U.S.C. §1692g are the only disclosures that can be required in collection letters. 15 U.S.C. §1692e prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt." Specific examples follow the general prohibition, but do not "[limit] the general application of the foregoing…." *Id.* See 15 U.S.C. §1692f (similar, as to "unfair" practices). It is clear from this language that the specific requirements do not constrict the established meaning of "deceptive."

Several specific prohibitions within 15 U.S.C. §1692e are implicated in Northland's Letter. Under 15 U.S.C. §1692e(2)(A), "the character, amount, or legal status of any debt" cannot be falsely represented. The Letter sent to Ms. Buchanan stated that "the current creditor is willing to reduce your balance," but also that Northland "[is] not obligated to renew this offer." These statements, without a disclosure that the debt is time-barred, conceals one key fact: while the creditor is willing to "reduce your balance," the balance of the debt that could be legally enforced is *zero*. Without a clarifying disclosure, an unsophisticated consumer would believe that the settlement represents an improvement on the current situation. This is deceptive, for a consumer is not required to pay anything on a time-barred debt. When combined with a deadline on the offer, and the Letter's claim that the chance might not come around again, a consumer might be

33

convinced to accept the settlement to prevent something worse from happening, although nothing worse can legally happen, other than the receipt of collection letters or calls on an unenforceable debt.  15 U.S.C. §§1692e(5), 1692e(10), and 1692f(1) were violated for similar reasons; the implication that litigation, or other adverse events, were coming without paying on a stale debt is deceptive and unfair.

The FTC and CFPB, while discussing *Evory v. RJM Acquisitions LLC*, 505 F.3d 769 (7th Cir. 2007) in the *Delgado* Brief, similarly found that a debt collector's "offer of 'settlement' has at least 'the potential for deception.'"  (FTC-CFPB *Delgado Brief*, PageID 557 (quoting *Evory*, 505 F.3d at 776).)  These agencies reasoned that "an unsophisticated consumer may well have a preexisting belief that 'settlement' and litigation are mutually exclusive options, such that rejecting a formal offer of 'settlement' will result in a lawsuit."  (*Id.*)  The claim that the collector is "not obligated" to renew the offer only turns up the heat; the FTC and CFPB found that a consumer can come away with an "impression that litigation could follow rejection of that offer…. [or] that failure to pay by that date would result in litigation."  (*Id.*, PageID 557-558.)  At the least, such a conclusion is plausible – which under *Carrier* is enough to survive a motion to dismiss.

Using "settlement" in the Letter implies a legal obligation.  One does not speak of "settling" a moral obligation.  A consumer might pay a moral obligation to the extent she can; "settlement," however, implies a compromise of a legally

enforceable claim, in lieu of a determination of legal rights in court.  It is "a principle well established that the compromise and settlement of an asserted claim involved in legal controversy, be it never so doubtful, constitute a sufficient consideration for the settlement, and for any obligation given by one party to the other in consideration of such settlement." *Sherman v. Phelps*, 297 N.W. 222, 223 (Mich. 1941).  See *Acierno v. Worthy Bros. Pipeline Corp.*, 656 A.2d 1085, 1092 (Del. 1995) (an accord and satisfaction requires that "there was uncertainty regarding the amount of the debt and that the uncertainty was the result of a *bona fide* dispute based on mutual good faith"); and *Oakmont Presbyterian Home v. Pennsylvania Department of Public Welfare*, 633 A.2d 1315, 1320 (Pa. Commw. 1993) ("a settlement agreement encompasses the compromise of a pending legal claim").  Here, Ms. Buchanan alleges deception and unfairness – not someone acting in good faith, but someone seeking collection on a debt where there is a known defense, with the result being that the defense is waived.

*Hagy v. Demers & Adams LLC*, No. 2:11CV530, 2011 WL 6091797, *7 (S.D.Ohio Dec. 7, 2011), in collecting cases, concluded that

> courts have routinely held that a settlement offer, when made in a deceptive manner, can be a violation of the FDCPA. *Goswami v. Am. Collections Enter.*, 377 F.3d 488, 496 (5th Cir.2004) (holding a debt collector may offer a settlement, but it may not be deceitful in the presentation of that settlement offer); *Gully v. Van Ru Credit Corp.*, 381 F.Supp.2d 766, 769–771 (N.D.Ill.2005) (considering whether a settlement offer is false or misleading under the FDCPA); *Dupuy v. Weltman*, 442 F.Supp.2d 822, 828 (N.D.Cal. 2006) (where a debt collection letter contains an offer to settle in an

untruthful manner the letter contains a false statement within the meaning of the FDCPA). The Seventh Circuit has explicitly held that an offer letter to discuss "foreclosure alternatives" was an attempt to collect on a defaulted home loan—by settlement or otherwise. *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 386 (7th Cir.2010). While "it is important to permit collection agencies to offer settlements, that policy consideration does not remove collection agencies' obligation under the FDCPA to deal in a nondeceitful manner." *Goswami*, 377 F.3d at 496.

The District Court was not asked to find that a debt collector could never make a settlement proposal, as the Opinion suggests.  (Opinion, PageID 574-575 (citing *Lewis v. ACB Business Services Inc.*, 135 F.3d 389, 399 (6th Cir. 1998)).)  A debt settlement proposal that does not deceive the reader is fine.  What is not permissible is a settlement proposal that makes false, misleading, deceptive or unfair statements; such a proposal in a collection attempt is prohibited.

The holding of *McRill v. Nationwide Credit Inc.*, No. 2:12CV2175, 2012 WL 6727974, *5 (C.D.Ill. Dec. 6, 2012), recognized the potentially misleading effect of a settlement proposal:

> It is plausible that, even absent a threat of litigation, a collection letter that fails to disclose that a debt is time-barred, or the dates of the transactions giving rise to the debt (which would, at least, give the consumer some idea of how old the debt was), would deceive at least a significant fraction of the population as to the character and legal status of the debt by creating the impression that the debt collector could sue to collect.

See, *e.g.*, *Rawson v. Source Receivables Management LLC*, No. 1:11CV8972, 2012 WL 3835096, *2 (N.D.Ill. Sept. 4, 2012) and *Delgado v. Capital Management Services Inc.*, No. 4:12CV4057, 2013WL 1194708 (C.D.Ill. March

36

22, 2013) (similar).  Ms. Buchanan respectfully submits that the District Court should have held likewise.

## IV.    CONCLUSION

The decision below should be reversed, and the case should be remanded for further proceedings consistent with this Court's ruling.

DATED:         February 26, 2014              Respectfully submitted,

/s/ Thomas E. Soule
Thomas E. Soule

Daniel A. Edelman
Cathleen M. Combs
Thomas E. Soule
EDELMAN COMBS LATTURNER & GOODWIN LLC
120 South LaSalle Street, 18th Floor
Chicago IL 60603
(312) 739-4200
(312) 419-0379 (fax)
courtecl@edcombs.com
*Counsel for plaintiff-appellant Esther Buchanan*

## COMPLIANCE CERTIFICATE

I, Thomas E. Soule, counsel for Esther Buchanan, certify that this brief complies with Fed.R.App.P. 32(a)(5), 32(a)(6) and 32(a)(7), in that it is printed in Times New Roman (in 14-point typeface), and that it is 9,454 words long (according to Microsoft Word, the word processor used to produce the brief).

DATED:    February 26, 2014                Respectfully submitted,

                                           /s/ Thomas E. Soule
                                           Thomas E. Soule

## CERTIFICATE OF SERVICE

I, Thomas E. Soule, hereby certify that this brief was filed on February 26, 2014 through the Court's electronic filing procedures, and that the brief was electronically served upon counsel for defendant-appellee by operation of those procedures on the same date, as follows:

Joel D. Bertocchi
Hinshaw & Culbertson LLP
222 North LaSalle Street, Suite 300
Chicago IL 60601
(312) 704-3000
(312) 704-3001 (fax)
jbertocchi@hinshawlaw.com

DATED:    February 26, 2014                Respectfully submitted,

                                           /s/ Thomas E. Soule
                                           Thomas E. Soule

# DESIGNATION OF DOCUMENTS (6th Cir. R. 30(g))

***Document***                                                                    ***PageID***

Doc. 1 – Complaint ................................................................... 1-6
Doc. 1-1 – Collection letter (Exhibit A to Complaint) ........................... 7
Doc. 19 – Motion to dismiss ......................................................... 40-41
Doc. 20 – Memorandum in support of motion to dismiss ................................ 42-59
Doc. 21 – Response to motion to dismiss ........................................... 60-82
Docs. 21-1, 21-2 and 21-3 – Exhibits to response brief .................................. 83-370
    FTC complaint in *United States v. Asset Acceptance LLC*
        (No. 8:12CV182 (M.D.Fla), Doc. 1) ......................................... 107-136
    *Collecting Consumer Debts* (2009 FTC Report) ................................. 140-186
    Excerpts of *Repairing A Broken System* (2010 FTC Report) ............... 187-207
    Excerpts of *Structure & Practices* (2013 FTC Report) ...................... 218-276
    Consent orders between CFPB and American Express...................... 277-350
    Complaint in *Minnesota v. Midland Funding LLC*
        (No. 27-CV-11-11510 (Hennepin Co. (Minn.) Dist. Ct.)) ........ 351-369
    January 2013 Northland Group collection letter ......................................... 370
Doc. 22 – Reply in support of motion to dismiss ......................................... 371-384
Doc. 25 – Motion for leave to file surreply ................................................. 387-388
Doc. 25-1 – Proffered surreply ....................................................... 389-391
Doc. 26 – Motion for leave to take limited expert discovery .................... 393-394
Doc. 27 – Response to motion for leave to take limited expert discovery .... 422-424
Doc. 29 – Response to motion for leave to file surreply .............................. 426-428
Doc. 32 – Order denying leave to file surreply (Doc. 25) ..................................... 441
Doc. 33 – Order denying leave to take limited expert discovery (Doc. 26)..........442
Doc. 34-1 – *CFPB 2013 Annual FDCPA Report* ......................................... 445-501
Doc. 35-1 – FTC-CFPB *Delgado* Brief ....................................................... 530-561
Doc. 38 – Opinion granting motion to dismiss (Doc. 19) ............................ 567-575
Doc. 39 – Judgment for defendant........................................................576
Doc. 40 – Notice of appeal ................................................................577