No. 13–2523

In The United States Court of Appeals For The Sixth Circuit

———————————————

Esther Buchanan,
individually and on behalf of a class,
Plaintiff-Appellant,

v.

Northland Group Inc.,
Defendant-Appellee.

———————————————

On Appeal from the United States District Court
for the Western District of Michigan
Hon. Janet P. Neff

Case No. 1:12-cv-1011

———————————————

Brief of Amici Curiae Federal Trade Commission
and Consumer Financial Protection Bureau Supporting Reversal

———————————————

Meredith Fuchs
   *General Counsel*
To-Quyen Truong
   *Deputy General Counsel*
David Gossett
   *Assistant General Counsel for*
   *Litigation*
Nandan M. Joshi
   *Counsel*
Consumer Financial Protection Bureau
Washington, DC 20552

Jonathan E. Nuechterlein
   *General Counsel*
John F. Daly
   *Deputy General Counsel for*
   *Litigation*
*Theodore (Jack) Metzler
   *Attorney*
Office of the General Counsel
Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3502 (telephone)
(202) 326-2477 (facsimile)
tmetzler@ftc.gov

*Counsel for Amicus Curiae*
*Consumer Financial Protection Bureau*

*Counsel for Amicus Curiae*
*Federal Trade Commission*

* Counsel of Record

# Table of Contents

Table of Authorities ....................................................................... ii

Interest of Amici Curiae .............................................................. 1

Introduction ................................................................................. 4

Statement ..................................................................................... 5

Argument ..................................................................................... 8

I.    The FDCPA And Time-Barred Debt. ................................... 9

    A.    The Legal Standard. ..................................................... 10

    B.    In a Range of Circumstances, Collecting or Attempting to
        Collect Time-Barred Debts Violates the FDCPA. ..................... 13

        1.    Suing or threatening to sue on a time-barred debt
            violates the FDCPA. ............................................ 15

        2.    Attempts to collect time-barred debt may also violate
            the FDCPA or trigger an obligation to disclose in
            circumstances other than actual or threatened
            litigation. ........................................................... 16

II.   The District Court Erroneously Granted The Motion To
    Dismiss. ....................................................................... 20

Conclusion ................................................................................ 23

# Table of Authorities

**Page(s)**

## Cases

*Basile v. Blatt, Hasenmiller, Liebsker & Moore LLC*,
  632 F. Supp. 2d 842 (N.D. Ill. 2009) .................................................. 15

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)) .............................. 20, 21

*Bridge v. Ocwen Fed. Bank*, 681 F.3d 355 (6th Cir. 2012) ...................... 2

*Dunham v. Portfolio Recovery Assocs.*, 663 F.3d 997
  (8th Cir. 2011) ................................................................................. 2

*Evory v. RJM Acquisitions*, 505 F.3d 769 (7th Cir. 2007) ...................... 21

*Fed. Home Loan Mortgage Corp. v. Lamar*,
  503 F.3d 504 (6th Cir. 2007) ............................................................ 10

*Forest v. Parmalee*, 262 N.W.2d 653 (Mich. 1978) ................................ 14

*Frey v. Gangwish*, 970 F.2d 1516 (6th Cir. 1992) .................................. 10

*Freyermuth v. Credit Bureau Services*,
  248 F.3d 767 (8th Cir. 2001) ........................................................ 16, 17

*FTC v. Check Investors, Inc.*, 502 F.3d 159 (3d Cir. 2007) ..................... 11

*Handy-Clay v. City of Memphis*, 695 F.3d 531 (6th Cir. 2012) .............. 20

*Harvey v. Great Seneca Financial Corp.*,
  453 F.3d 324 (6th Cir. 2006) ........................................................ 10, 11

*Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28 (3d Cir. 2011) ............. 15, 17

*In re Int'l Harvester Co.*, 104 F.T.C. 949,
  1984 FTC LEXIS 2 (1984) ...................................................... 11, 12, 23

*In re Peacock Buick*, 86 F.T.C. 1532 (1975) ......................................... 12

*In re Stouffer Foods Corp.*, 118 F.T.C. 746,
  1994 FTC LEXIS 196 (1994) ...................................................... 12, 22

*J.B. Williams Co. v. FTC*, 321 F.2d 884 (6th Cir. 1967) ................... 11, 12

*Kimber v. Federal Fin. Corp.*, 668 F. Supp. 1480
  (M.D. Ala. 1987) ...................................................... 11, 15, 19

*Kistner v. Law Offices of Michael P. Margelefsky, LLC*,
  518 F.3d 433 (6th Cir. 2008) ............................................................ 11

*Lewis v. ACB Servs., Inc.*, 135 F.3d F.3d 389 (6th Cir. 1998) ............... 22

*McMillan v. Collection Professionals, Inc.*,
  455 F.3d 754 (7th Cir. 2006) ............................................................ 20

*Rawson v. Source Receivables Mgmt.*, 2012 U.S. Dist.
  LEXIS 125205 (N.D. Ill. 2012) ......................................................... 15

*R.R. Telegraphers v. Ry. Express Agency*, 321 U.S. 342 (1944) ............. 13

*Simeon Mgmt. Corp. v. FTC*, 579 F.2d 1137
  (9th Cir. 1978) ............................................................................ 2, 12

*Stepney v. Outsourcing Solutions, Inc.*, 1997 U.S. Dist.
  LEXIS 18264 (N.D. Ill. 1997) ...................................................... 16, 18

*Trans World Accounts, Inc. v. FTC*, 594 F.2d 212
  (9th Cir. 1979) ................................................................................ 11

*United States v. Kubrick*, 444 U.S. 111 (1979) ....................................... 13

*Walker v. Cash Flow Consultants, Inc.*,
  200 F.R.D. 613 (N.D. Ill. 2001) ........................................................ 17

*Walker v. Nat'l Recovery, Inc.*, 200 F.3d 500 (7th Cir. 1999) ................. 10

*Wallace v. Capital One Bank*, 168 F. Supp. 2d 526 (D. Md. 2001) ... 14, 15

## Statutes, Rules, & Regulatory Materials

12 U.S.C. § 5481 ................................................................................... 2

15 U.S.C. § 45 ...................................................................................... 1

15 U.S.C. § 53 ...................................................................................... 1

15 U.S.C. § 57b ..................................................................................... 1

15 U.S.C. § 1692e ................................................................. 4, 6, 7, 9, 18

15 U.S.C. § 1692f ............................................................................... 6, 7

15 U.S.C. § 1692g ................................................................................. 7

15 U.S.C. § 1692*l* ............................................................................. 1, 2

Miss. Code Ann. § 15-1-3 .................................................................... 14

Wis. Stat. Ann. § 893.05 ..................................................................... 14

FTC, *Staff Commentary on the Fair Debt Collection Practices Act*, 53 Fed. Reg. 50097 (Dec. 13, 1988) .......................... 9, 10

78 Fed. Reg. 67848 (Nov. 12, 2013) ............................................................. 3

Fed. R. Civ. P. 12 ..................................................................................... 6

## FTC Reports

FTC, *Collecting Consumer Debts: The Challenges of Change* (Feb. 2009) ....................................................... 2, 13

FTC, *Repairing a Broken System: Protecting Consumers in Debt Collection Litigation and Arbitration* (July 2010) ..................... 2, 13, 14, 18, 19

FTC, *The Structure and Practices of the Debt Buying Industry* (Jan. 2013) ............................... 2, 14, 18

## Interest of Amici Curiae

The Federal Trade Commission and the Consumer Financial Protection Bureau, agencies of the United States, file this brief pursuant to Federal Rule of Appellate Procedure 29(a) to aid the Court in its interpretation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*

The Commission is the federal agency with principal responsibility for protecting consumers from deceptive or unfair trade practices, which include violations of the FDCPA. 15 U.S.C. § 1692*l*(a). A violation of the FDCPA is "deemed an unfair or deceptive act or practice in violation of the [FTC] Act," and the Commission may enforce FDCPA violations as if they were violations "of a Federal Trade Commission trade regulation rule." *Id.* The Commission enforces the FDCPA through original suits for injunctive and equitable monetary relief under Sectiond 13(b) and 19 of the FTC Act. 15 U.S.C. §§ 53(b), 57b. The Commission may also address deceptive debt collection practices under Section 5(b) of the FTC Act, 15 U.S.C. § 45(b).

The Bureau is similarly charged with "regulat[ing] the offering and provision of consumer financial products and services under

Federal consumer financial law," which includes the FDCPA. 12 U.S.C.

§ 5481(12), (14). The Bureau is authorized to enforce the FDCPA, 15

U.S.C. § 1692*l*(b)(6), and to "prescribe rules with respect to the

collection of debts by debt collectors," 15 U.S.C. § 1692*l*(d).

The Commission and the Bureau have closely studied the debt-

collection industry and the problems associated with the collection of

debts beyond their statute of limitations. In recent years, the Com-

mission has published several reports on the debt-collection industry,

each of which recognizes the potential that consumers will be misled by

such collection efforts.[1] Moreover, courts have found the Commission's

"accumulated expertise" persuasive regarding "the expectations and

beliefs of the public, especially where the alleged deception results from

an omission of information instead of a statement." *Simeon Mgmt. Corp.

v. FTC*, 579 F.2d 1137, 1145 (9th Cir. 1978); *see also*, *e.g.*, *Bridge v.

Ocwen Fed. Bank*, 681 F.3d 355, 361 (6th Cir. 2012) (finding FTC Staff

Commentary on the FDCPA "instructive"); *Dunham v. Portfolio*

---

[1] *See* FTC, *Repairing a Broken System: Protecting Consumers in Debt Collection Litigation and Arbitration* (July 2010), http://1.usa.gov/buF50z ("*Broken System*"); FTC, *The Structure and Practices of the Debt Buying Industry* (Jan. 2013), http://1.usa.gov/Z0EjxZ ("*Structure & Practices*"); FTC, *Collecting Consumer Debts: The Challenges of Change* (Feb. 2009), http://1.usa.gov/3ZLwb ("*Challenges*").

*Recovery Assocs.*, 663 F.3d 997, 1002 (8th Cir. 2011) ("[W]e have found [the FTC's] Staff Commentary [on the FDCPA] persuasive in the past.").

In 2013, the Bureau issued an Advance Notice of Proposed Rulemaking, seeking data and comments on numerous aspects of the debt-collection industry, including issues relating to the collection of time-barred debts. *See* 78 Fed. Reg. 67848, 67875–76 (Nov. 12, 2013). The Commission and the Bureau have also jointly submitted amicus briefs in cases addressing the interpretation of the FDCPA. *See Sykes v. Mel S. Harris and Associates*, No. 13–2742 (2d Cir.); *Delgado v. Capital Management Services*, No. 13–8009 (7th Cir.) (regarding the collection of time-barred debts).

Amici thus have an interest in the Court's resolution of the issue presented in this case.

## Introduction

The debt collector in this case sent Esther Buchanan a dunning letter with an offer to settle a debt upon which the statute of limitations had expired. Ms. Buchanan filed a class-action complaint, contending that the letter violated, *inter alia*, the FDCPA's prohibition on the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. On the debt collector's motion, the district court dismissed the complaint, holding that, as a matter of law, the letter could not have violated the FDCPA.

Several courts have held that a collector who sues or threatens suit on a time-barred debt violates the FDCPA. The Commission and the Bureau agree. But actual or threatened litigation is not a *necessary* predicate for an FDCPA violation in the context of time-barred debt. Rather, a debt collector violates the statute whenever its communications tend to deceive or mislead "the least sophisticated consumer," whom the FDCPA was enacted to protect. Depending on the circumstances, a settlement offer can erroneously lead unsophisticated consumers to believe a debt is enforceable in court even if the offer is unaccompanied by any clearly implied threat of litigation.

Here, the settlement offer represented that the consumer's balance would continue to accrue "interest" and included a warning that the company was "not obligated to renew" the settlement offer. Even if those statements are not deemed an implicit threat of litigation—an issue this brief does not address—they could plausibly mislead an unsophisticated consumer into believing that she could be sued for the debt. The district court thus erred in holding that, as a matter of law, the letter could not mislead the least sophisticated consumer, and the court's dismissal of the complaint should be reversed. Given the posture of this case, however, the Commission and the Bureau take no position on the ultimate merits of plaintiff's claims.

## Statement

This case arises from the district court's dismissal of the class-action complaint brought by Esther Buchanan against a debt collection agency, Northland Group, Inc. In 2011, Northland sent Ms. Buchanan a letter seeking to collect a debt originally due to National City Bank. Complaint, Dist. Ct. Docket No. 1, Ex. A. Centered in large, bold type, the letter stated:

**Your past due account balance: $4,768.43**

**Your settlement offer: $1,668.96**

*Id.* The letter stated, "As of the date of this letter, you owe $4,768.43. Because of interest that may vary from day to day, the amount due on the day you pay may be greater." *Id.* The letter said that the "current creditor is willing to reduce your balance by offering you a settlement." *Id.* "Upon receipt and clearance of $1,668.96, your account will be satisfied and closed and a settlement letter will be issued." *Id.* The letter also represented that "[w]e are not obligated to renew this offer." *Id.* The letter did not tell Ms. Buchanan that the statute of limitations for filing an action to collect the debt had run and that Northland could not therefore compel her to pay. *Id.*

Ms. Buchanan filed a putative class-action complaint, alleging that the last payment on the debt was made more than six years before Northland's letter,[2] and that an action to enforce the debt would therefore be barred by Michigan's six-year statute of limitations for contract actions. Complaint, Dist. Ct. Docket No. 1, at 2. The complaint alleges that the letter violates the FDCPA, 15 U.S.C. §§ 1692e & 1692f,

---

[2] Because this appeal arises from the grant of a motion to dismiss, amici take the complaint's factual allegations as true. *See* Fed. R. Civ. P. 12.

- 6 -

because the failure to disclose that the debt was time-barred, together with the offer to settle, amounted to a misleading representation that the debt could be legally enforced. *Id.* at 3–4.

The district court granted Northland's motion to dismiss the complaint for failure to state a claim upon which relief may be granted. Opinion & Order at 1. The court observed that, although the FDCPA requires a debtor to include certain information in its communications with a debtor, it "does not specifically require a debt collector to disclose the applicable limitations period." *Id.* at 5–6 (quoting 15 U.S.C. § 1692g). The court opined that "[i]n Michigan, the statute of limitations is a procedural defense that does not alter the creditor's substantive rights," and concluded that because "the passage of the limitations period does not affect the validity of the debt," Northland's failure to state that Ms. Buchanan's debt was time-barred was not a "false representation" or an "unfair practice," and did not "falsely represent the 'legal status of the debt'" *Id.* at 7, citing 15 U.S.C. §§ 1692e(10), 1692e(2)(A), and 1692f.

The court then rejected Ms. Buchanan's argument that "the debt collection letter 'implies that a legally enforceable obligation existed'" in

violation of the FDCPA. *Id.* at 7–8. Without discussion, the court held that, as a matter of law, "even the least sophisticated consumer would not infer a threat of litigation" from the letter. *Id.* at 8. In the district court's view, the least-sophisticated consumer would understand the difference between a "proposed settlement of the debt" and "settlement of a future or ongoing lawsuit." *Id.* at 8.

In reaching its conclusions, the district court dismissed Ms. Buchanan's citations of FTC and CFPB materials interpreting the FDCPA. *Id.* at 6. In the court's view, amici's reports and litigation activities "do not call on courts to read the FDCPA one way or another, but only highlight a variety of concerns with potential reforms." *Id.* at 6.

## Argument

A debt collector who seeks payment after the statute of limitations has run on a debt may violate the FDCPA if, *inter alia*, its communication would lead the least-sophisticated consumer to believe that the debt may be enforced in court. With respect to time-barred debt, it is well established that implicit or explicit threats to sue and actual lawsuits violate the Act. But other communications that mislead consumers may also qualify. In this case, the district court erred in

dismissing the complaint, because the debt collector's letter could plausibly mislead the least-sophisticated consumer as to the legal status of the debt.

## I.    The FDCPA And Time-Barred Debt.

The FDCPA prohibits, among other things, the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.[3] Section 1692e contains a nonexclusive list of prohibited practices. These include making a false representation of "the character, amount, or legal status of any debt," threatening "to take any action that cannot legally be taken or that is not intended to be taken," and "using any false or deceptive means to collect or attempt to collect any debt." 15 U.S.C. §§ 1692e(2)(A); 1692e(5); 1692e(10). The last prohibition is "particularly broad and encompasses virtually every violation, including those not covered by the other subsections." FTC, *Staff Commentary on the Fair Debt Collection Practices Act*, 53 Fed. Reg. 50097, 50105 (Dec. 13, 1988). Under this subsection, "[a] debt collector may not [*inter alia*] mislead

---

[3] Ms. Buchanan's complaint alleged violations of both Sections 1692e and 1692f, which prohibits "unfair or unconscionable" debt collection practices. This brief focuses on misleading or deceptive conduct under Section 1692e.

the consumer as to the legal consequences of the consumer's actions."

*Id.* at 50106.

### A. The Legal Standard.

As this Court has held, "[t]he Fair Debt Collection Practices Act is

an extraordinarily broad statute. Congress addressed itself to what it

considered to be a widespread problem, and to remedy that problem it

crafted a broad statute." *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th

Cir. 1992). In assessing whether a debt collector's communications are

misleading or deceptive under the FDCPA, this Court applies "an

objective test" based on whether the "least sophisticated consumer"

would be misled or deceived. *Harvey v. Great Seneca Financial Corp.*,

453 F.3d 324, 331 (6th Cir. 2006).[4] "To learn how an unsophisticated

reader reacts to a letter, the judge may need to receive evidence."

*Walker v. Nat'l Recovery, Inc.*, 200 F.3d 500, 501 (7th Cir. 1999).

---

[4] This standard is intended "to ensure that the FDCPA protects all
consumers, the gullible as well as the shrewd." *Fed. Home Loan
Mortgage Corp. v. Lamar*, 503 F.3d 504, 509 (6th Cir. 2007). "Although
this standard protects naïve consumers, it also prevents liability for
bizarre or idiosyncratic interpretations of collection notices by
preserving a quotient of reasonableness and presuming a basic level of
understanding and willingness to read with care." *Id.*

A debt collector's communication need not contain overtly false statements to be misleading or deceptive; omissions may also deceive. *Kimber v. Federal Fin. Corp.*, 668 F. Supp. 1480, 1489 (M.D. Ala. 1987) ("[T]o be deceptive a representation need not be expressed and it need not be obvious to everyone."); *see also Harvey*, 453 F.3d at 332–333 (6th Cir. 2006) (quoting *Kimber*). Moreover, a dunning letter that has "more than one reasonable interpretation" may be deceptive to the least sophisticated consumer. *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 441 (6th Cir. 2008).

The Commission has explained (in the FTC Act context[5]) that "it can be deceptive to tell only half the truth, and to omit the rest," or "to simply remain silent . . . under circumstances that constitute an implied but false representation." *In re Int'l Harvester Co.*, 104 F.T.C. 949, 1984 FTC LEXIS 2, at \*240–241 (1984). For example, as this Court has agreed, a "failure to disclose" facts can be "false and misleading" where an "advertisement creates [a] false impression." *J.B. Williams Co. v.*

---

[5] In determining whether conduct is deceptive under the FDCPA, the Commission's interpretation of deception under Section 5 of the FTC Act is instructive. *See, e.g., FTC v. Check Investors, Inc.*, 502 F.3d 159, 174 (3d Cir. 2007); *Trans World Accounts, Inc. v. FTC*, 594 F.2d 212, 214 (9th Cir. 1979) ("The deceptive acts or practices forbidden by the [FTC] Act include those used in the collection of debts.").

*FTC*, 321 F.2d 884, 889 (6th Cir. 1967). Whether a statement is false or misleading in that respect often depends "on ordinary consumer expectations." *Int'l Harvester*, 1984 FTC LEXIS 2, at *240.

To avoid misleading consumers, sellers and debt collectors alike may be required to correct consumers' misimpressions even if they did not directly create, or only partially created, the misimpression. The Commission has thus held that advertisers may be held liable for deception where, by failing to correct misimpressions, their ads "capitalize on preexisting consumer beliefs." *In re Stouffer Foods Corp.*, 118 F.T.C. 746, 1994 FTC LEXIS 196, at *36 n.1 (1994); *see also Simeon Mgmt. Corp. v. FTC*, 579 F.2d 1137, 1145 (9th Cir. 1978) (affirming Commission holding that seller's "failure to disclose" certain details of its weight loss program, combined with consumers' preexisting misimpressions, "render[ed]the [seller's] advertisement deceptive"); *In re Peacock Buick*, 86 F.T.C. 1532, 1555 (1975), *aff'd mem.*, 553 F.2d 97 (4th Cir. 1977) ("[D]eception can result from the setting in which a sale is made and the expectations of the [borrower]—whether intent to deceive exists or not."); *J.B. Williams*, 321 F.2d at 890 (failure to

disclose "renders it difficult for the typical consumer to know whether the product will in fact meet his needs").

### B. In a Range of Circumstances, Collecting or Attempting to Collect Time-Barred Debts Violates the FDCPA.

Statutes of limitation reflect a legislative judgment that failing to put a defendant on notice to defend against a suit within a specified period is "unjust." *United States v. Kubrick*, 444 U.S. 111, 117 (1979). This is because "'the right to be free of stale claims in time comes to prevail over the right to prosecute them.'" *Id.* (quoting *R.R. Telegraphers v. Ry. Express Agency*, 321 U.S. 342, 349 (1944)). Statutes of limitation "protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence." *Id.* The limitations period also provides a bright line for debt holders and consumers, signifying a time when "no further legal action to collect on a debt is permitted." *Challenges, supra* n.1 at 63. The running of the statute thus works to the benefit of consumers who owe debts that become stale. Yet the applicable state statutes of limitation can be "variable and complex, and [are] generally not understood by consumers." *Broken System*, *supra* n.1 at 2, 26.

In most states, the expiration of the statute of limitations on a debt does not extinguish the debt.[6] *Structure & Practices*, *supra* n.1 at 45. In other words, the running of the statute "does not prohibit the collector from using non-litigation means" to collect the debt, so long as those efforts do not violate the prohibitions in the FDCPA and other laws. *Broken System* at 22–23. Nor is it necessarily futile to issue an FDCPA-compliant request for payment after the statute of limitations has run. Consumers may choose for moral or other reasons to pay their debts even when they know those debts are time-barred. *Broken System* at 23 n.103.

Accordingly, in some circumstances "a debt collector may seek voluntary payment of a time-barred debt" without violating the FDCPA, even if the communication is silent as to the statute of limitations. *Wallace v. Capital One Bank*, 168 F. Supp. 2d 526, 528 (D. Md. 2001).

---

[6] Two exceptions are Mississippi and Wisconsin, where the expiration of the statute of limitations does extinguish the debt. Miss. Code Ann. § 15-1-3; Wis. Stat. Ann. § 893.05. The district court here held that in Michigan the statute of limitations is a "procedural defense that does not alter the creditor's substantive rights." Opinion at 6, citing *Forest v. Parmalee*, 262 N.W.2d 653, 657 (Mich. 1978). But whatever substantive rights survive the running of the statute, they do not include suing to collect the debt or misleading a consumer to believe she could be sued.

However, the "contact between a debt collector and a debtor" will violate the FDCPA if it explicitly or implicitly "represent[s] that the debt collector can sue on the debt" or otherwise violates the FDCPA's prohibitions. *See id.*; *Kimber*, 668 F. Supp. at 1489.

### 1. Suing or threatening to sue on a time-barred debt violates the FDCPA.

It is well-established that threatening to sue on a time-barred debt violates the FDCPA. *E.g.*, *Kimber*, 668 F. Supp. at 1480; *Basile v. Blatt, Hasenmiller, Liebsker & Moore LLC*, 632 F. Supp. 2d 842, 845 (N.D. Ill. 2009) (collecting cases). Threats to sue (and actual lawsuits) misrepresent the legal status of time-barred debt—violating 15 U.S.C. § 1692e(2)(A)—by implying that the collector "can legally prevail" in a lawsuit. *E.g.*, *Kimber*, 668 F. Supp. at 1488. For similar reasons, filing or threatening suit also violates both Section 1692e(5) as an improper threat and Section 1692e(10) as a deceptive means of collecting an expired debt.

As most courts have recognized, an implicit threat is sufficient to violate the statute. *E.g.*, *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 33 (3d Cir. 2011) (looking to whether letter "explicitly or implicitly threaten[ed] litigation"); *Rawson v. Source Receivables Mgmt.*, 2012

U.S. Dist. LEXIS 125205, at *5 (N.D. Ill. 2012) (threatening "further collection efforts" sufficient); *Stepney v. Outsourcing Solutions, Inc.*, 1997 U.S. Dist. LEXIS 18264, at *1, *5 (N.D. Ill. 1997) (threatening "further collection action").

**2.    Attempts to collect time-barred debt may also violate the FDCPA or trigger an obligation to disclose in circumstances other than actual or threatened litigation.**

Although an implicit threat of litigation is a *sufficient* condition of a statutory violation in this context, it is not also a *necessary* condition.[7] That point is the subject of some confusion in the case law. Though there is wide agreement that actual or threatened lawsuits on stale debts violate the FDCPA, a number of courts have inartfully described this principle as if it sets the outer limit on FDCPA liability in time-barred debt cases. For example, in *Freyermuth v. Credit Bureau Services,* the Eighth Circuit stated that "in the absence of a threat of litigation or actual litigation, no violation of the FDCPA has occurred when a debt collector attempts to collect on a potentially time-barred

---

[7] It is plausible that the dunning letter in this case qualifies as an implied threat of litigation, but this brief takes no position on that issue, and the discussion in this section addresses the separate issue whether collection efforts may violate the Act even in the absence of such threats.

debt that is otherwise valid." 248 F.3d 767 (8th Cir. 2001). The Third

Circuit has similarly stated that a plaintiff's "FDCPA claim hinges on

whether [the debt collector's] letter threatened litigation." *Huertas*, 641

F.3d at 28. Other courts have used comparable language. *E.g.*, *Walker v.*

*Cash Flow Consultants, Inc.*, 200 F.R.D. 613, 616 (N.D. Ill. 2001) ("[I]n

order to survive a motion to dismiss, a defendant's attempt to collect on

a time-barred debt must be accompanied by actual litigation or a threat,

either explicit or implicit, of future litigation.").

But most of these cases involved plaintiffs' claims that *any*

attempt to collect a stale debt without telling the consumer it is time-

barred violates the FDCPA. *E.g.*, *Huertas*, 641 F.3d at 32–33; *Walker*,

200 F.R.D. at 616 ("[I]t is [not] a violation of the FDCPA to merely

attempt to collect a time-barred debt."). In rejecting that broad claim,

these courts did not consider that some attempts to collect stale debts—

unaccompanied by any threat of suit—may be misleading in other ways.

In fact, some such attempts clearly are unlawful. Under its plain

terms, a debt collector violates the Act by (among other things)

misrepresenting the "character, amount, or legal status" of a debt; or by

using any other "false representation or deceptive means" to collect the

debt. 15 U.S.C. §§ 1692e(2)(A), 1692e(10). The "critical issue" is not simply whether there has been an actual or threatened lawsuit, but whether the least sophisticated consumer would be misled or deceived by the debt collector's conduct. *Stepney*, 1997 U.S. Dist. LEXIS 18264, at *13; *see Structure & Practices*, *supra* n.1 at 46–47 (Efforts to collect time-barred debt that "convey or imply to consumers that the collectors could sue them if they do not pay" are "false or misleading."); *Broken System*, *supra* n.1 at 26. Suing and threatening to sue on a time-barred debt are two specific examples of conduct that qualify. But they are not the only ones.

For example, the Commission has concluded in a related context that consumers can be misled or deceived when debt collectors seek partial payments on stale debt. *Broken System* at 27–28; *Structure & Practices* at 47. In most states, a partial payment restarts the statute of limitations for the entire amount of the debt. *Structure & Practices* at 47 & n.195 (collecting cases). The Commission observed that "consumers do not expect" that a partial payment "will have the serious, adverse consequence of starting a new statute of limitations." *Broken System* at 28.

Accordingly, the Commission concluded that a debt collector's solicitation of a partial payment on a time barred debt can "create a misleading impression as to the consequences of making [a] payment," thereby violating the FDCPA, if it inaccurately implies that the payment will *reduce* the consumer's legal obligation. *Id.* at 28. The Commission stated that "[t]o avoid creating a misleading impression, collectors would need to disclose clearly and prominently to consumers prior to requesting or accepting such payments that (1) the collector cannot sue to collect the debt and (2) providing a partial payment would revive the collector's ability to sue to collect the balance." *Id.*

In sum, the debt collector need not make an overt threat of litigation to violate the FDCPA. Rather, the court must consider a practice's effect on unsophisticated consumers from their perspective; for example, it will often be relevant that most consumers do not know or understand their legal rights with respect to time-barred debt. *See Broken System* at 2, 26; *Kimber*, 668 F. Supp. 1480, 1486–88 ("[F]ew unsophisticated consumers would be aware that a statute of limitations could be used to defend against lawsuits based on stale debts," and "would unwittingly acquiesce to such lawsuits."). In some

circumstances, a debt collector may be required to make affirmative disclosures in order to avoid misleading consumers.

## II. The District Court Erroneously Granted The Motion To Dismiss.

To survive a motion to dismiss, Ms. Buchanan's complaint must "allege[] facts that 'state a claim to relief that is plausible on its face' and that, if accepted as true, are sufficient to 'raise a right to relief above the speculative level.'" *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court construes the complaint in the light most favorable to the plaintiff, and draws all reasonable inferences in her favor. *Id.*

Whether a debt collector's letter is false, deceptive, or misleading requires "a fact-bound determination of how an unsophisticated consumer would perceive the letter." *McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 759 (7th Cir. 2006). Accordingly, district courts should "act with great restraint" when ruling on a motion to dismiss a complaint brought under Sections 1692e and 1692f of the FDCPA. *Id.* at 759.

Here, the question before the district court was whether Northland's letter could plausibly be construed as an implied threat of litigation or could otherwise plausibly mislead the least sophisticated consumer to believe that her debt was enforceable in court. The dunning letter included (1) an offer of "settlement" of the debt; (2) a representation that the company "is not obligated to renew this offer"; (3) a representation that "[b]ecause of interest," the "amount due on the day you pay may be greater"; and (4) a representation that upon payment "your account will be satisfied and closed and a settlement letter will be issued." Complaint, Dist. Ct. Docket No. 1, Ex. A. Because the least sophisticated consumer could plausibly infer that Northland would or could sue if she did not pay, the complaint's allegations sufficed to "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 570, and the district court's order of dismissal was error.

Northland's offer of "settlement" had at least "the potential for deception." *See Evory v. RJM Acquisitions*, 505 F.3d 769, 776 (7th Cir. 2007). The least sophisticated consumer may well have had a pre-existing belief that "settlement" and litigation are mutually exclusive options, such that rejecting a formal offer of "settlement" will result in a

lawsuit. *Cf. Stouffer Foods*, 118 F.T.C. 746, 1994 FTC LEXIS 196, at

*36 n.1. Indeed, in dismissing this very possibility, the district court

relied on cases contrasting a settlement offer with litigation. Opinion &

Order at 8–9 (quoting, *e.g.*, *Lewis v. ACB Servs., Inc.*, 135 F.3d F.3d 389,

399 (6th Cir. 1998) (prohibiting settlement offers "would force honest

debt collectors seeking peaceful resolution of the debt to file suit";

settlement offers "may result in resolution of the debt without resorting

to litigation").)

Moreover, Northland's additional representations may have

contributed to the impression that litigation could follow rejection of the

settlement offer. For example, the admonition that "[w]e are not

obligated" to renew the settlement offer could suggest that something

worse than a settlement offer—like a lawsuit—would result from

turning down the settlement. And the representation that interest

would continue to accrue on the account could reinforce that suggestion

by implying that that the consumer would eventually have to pay

(through litigation or otherwise) even more than the "past due account

balance" listed in the letter. For a consumer who does not know that the

statute of limitations bars suit, these representations could influence

how she views and responds to an offer for "settlement." In short, Northland's failure to include "qualifying information necessary to prevent [the settlement offer] from creating a misleading impression" could therefore be deceptive. *Cf. Int'l Harvester*, 104 F.T.C. 949, 1984 FTC LEXIS 2, at *240.

In sum, because the letter could plausibly mislead an unsophisticated consumer to believe that a time-barred debt could be enforced through litigation, the complaint plausibly stated a claim for relief under the FDCPA, and the district court incorrectly granted the motion to dismiss.

## Conclusion

The district court's judgment dismissing the case should be reversed.

Respectfully submitted,

Jonathan E. Nuechterlein
General Counsel

John F. Daly
Deputy General Counsel for Litigation

Dated: March 5, 2014                    /s/ Theodore (Jack) Metzler
                                        Theodore (Jack) Metzler
                                        Attorney
                                        Office of the General Counsel

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3502 (telephone)
(202) 326-2477 (facsimile)
tmetzler@ftc.gov

*Counsel for Amicus Curiae*
 *Federal Trade Commission*

Meredith Fuchs
General Counsel

To-Quyen Truong
Deputy General Counsel

David Gossett
Assistant General Counsel for
Litigation

Nandan M. Joshi
Counsel
Consumer Financial Protection
Bureau
Washington, DC 20552

*Counsel for Amicus Curiae*
*Consumer Financial Protection*
*Bureau*

## CERTIFICATE OF COMPLIANCE

This brief complies with Federal Rules of Appellate Procedure 29(d) and 32(a)(7) in that it contains 4,589 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirement of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Century Schoolbook.


Dated: March 5, 2014          /s/ Theodore (Jack) Metzler
                              Theodore (Jack) Metzler
                              Attorney
                              Office of the General Counsel
                              Federal Trade Commission
                              600 Pennsylvania Avenue NW
                              Washington, DC 20580
                              (202) 326-3502 (telephone)
                              (202) 326-2477 (facsimile)
                              tmetzler@ftc.gov

## CERTIFICATE OF SERVICE

I hereby certify that on March 5, 2014 I filed and served the foregoing with the Court's appellate CM-ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: March 5, 2014

/s/ Theodore (Jack) Metzler
Theodore (Jack) Metzler
Attorney
Office of the General Counsel
Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3502 (telephone)
(202) 326-2477 (facsimile)
tmetzler@ftc.gov